BERGER MONTAGUE PC
Benjamin Galdston (SBN 211114)
Email: bgaldston@bm.net
12544 High Bluff Drive, Suite 340
San Diego, CA 92130
Tel: (619) 489-0300

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

LATISHA WATSON, Individually and on Behalf of All Others Similarly Situated,

Plaintiffs,

v.

THE UNIVERSITY OF SOUTHERN CALIFORNIA, and THE BOARD OF TRUSTEES OF THE UNIVERSITY OF SOUTHERN CALIFORNIA,

Defendants.

Case No. 2:20-cv-04107

**CLASS ACTION COMPLAINT**

**(1) BREACH OF CONTRACT;**

**(2) RESTITUTION BASED ON QUASI CONTRACT;**

**(3) CONVERSION; and**

**(4) UNFAIR BUSINESS PRACTICES IN VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200, et seq.**

JURY TRIAL DEMANDED

# TABLE OF CONTENTS

**Page(s)**

I. NATURE OF THE ACTION .......... 1

II. PARTIES .......... 4

A. Plaintiff .......... 4

B. Defendants .......... 5

III. JURISDICTION AND VENUE .......... 5

IV. FACTUAL ALLEGATIONS .......... 5

V. CLASS ACTION ALLEGATIONS .......... 11

COUNT I
Breach of Contract .......... 13

COUNT II
Restitution Based On Quasi-Contract .......... 14

COUNT III
Conversion .......... 15

COUNT IV
Cal. Bus. & Prof. Code § 17200 .......... 16

VI. PRAYER FOR RELIEF .......... 17

VII. DEMAND FOR JURY TRIAL .......... 18

Plaintiff Latisha Watson ("Watson"), individually and on behalf of all other similarly situated students (collectively, "Plaintiffs" or the "Class" as defined below), brings this class action complaint against the University of Southern California ("USC") and the Board of Trustees of the University of Southern California (collectively, "Defendants" or the "University"). Plaintiff makes the following allegations upon personal knowledge as to her own acts and upon information and belief and her attorneys' investigation as to all other matters.

## I. NATURE OF THE ACTION

1. This is a class action brought on behalf of Plaintiff and other similarly situated USC students who paid tuition and fees for the Spring 2020 academic semester and who (i) did not receive their bargained-for educational and other services and (ii) have not been refunded a prorated portion of their tuition and fees after the University ceased providing such services to students during the Spring 2020 academic semester due to Coronavirus Disease 2019 ("COVID-19").

2. Specifically, as a result of Defendants' wrongful acts and unfair business practices alleged herein, Plaintiff and the proposed Class (i) have not received any refund or reimbursement for the unused services for which they paid; and/or (ii) received inadequate reimbursements for unused meal plan amounts that they were unable to use after USC's campus was closed due to COVID-19; and/or (iii) did not receive any refund or reimbursement for the decreased value of the education they received from USC when their classes transitioned from in-person instruction at the University's campus facilities to an entirely remote, online learning format.

3. USC is a private university in California. In 2019, USC enrolled more than 20,000 undergraduate and approximately 28,000 graduate students for a total enrollment of approximately 48,500 students.

4. USC has a $6 billion endowment and is the 22nd wealthiest university

in the United States.

5. The estimated annual USC undergraduate tuition is $57,256, exclusive of fees, including housing, meals, and other incidentals. For graduate students, the cost varies. For example, the estimated annual tuition and fees for graduate students in USC's social work program is approximately $55,620.

6. In response to COVID-19, on or around March 11, 2020, the University announced its intention to cease all in-person classes. Instead, the University would attempt to provide instruction electronically via online classes until at least March 13. That date was subsequently extended to April 14 and has now been extended through the end of the academic year. The move to all online classes also applies to all Summer courses.

7. On April 28, 2020, USC Provost Charles Zukoski sent a campus-wide email announcing that the University would ***not*** offer students any prorated tuition refunds for the Spring semester or upcoming Summer sessions. He also announced that both Summer sessions would be conducted exclusively online.

8. The University has not provided any in-person classes since March 13, 2020. Since then, USC has offered less valuable online classes instead of the bargained-for in-person instruction to those students enrolled for the Spring 2020 semester (January 9, 2020 - May 13, 2020). Consequently, since March 13, 2020, Defendants have not provided the education, services, facilities, technology, access or opportunities for which Plaintiff and the Class paid. Moreover, Defendants have failed to compensate Plaintiff and the Class for the diminished value and damages they have suffered as a result of Defendants' actions.

9. Over 7,000 people have signed an online petition at www.change.org requesting that USC provide refunds to students to compensate them for the harm suffered as a result of the campus closures, failure to provide in-person instruction

and other benefits promised by the University and paid for by Plaintiffs.[1]

10. The University also has received ***$19 million*** in government funding through the Coronavirus Aid, Relief, and Economic Security Act (CARES) Act, half of which is federally mandated to go toward students who are in need of emergency financial assistance. As a result of Defendants' actions, students who do not meet academic progress requirements for the Spring semester, and international and undocumented students, will be denied access these funds.

11. Despite receiving this influx of federal funds, Defendants refuse to refund or reimburse Plaintiff and similarly-situated USC students the fees they paid for the education and other services they are not being provided, including fees for mandatory meal plans that were intended to pay for dining services that are no longer available.

12. Defendants also refuse to refund or reimburse Plaintiff and similarly situated students for tuition paid for classes that USC is currently providing to them that are substantially less valuable than the classes promised. And, Defendants have failed to properly reimburse students for the payments they made for the unused portions of the meal plans.

13. Plaintiff and other Class members have lost the benefits of the education, services, food, housing, and other experiences that the University promised. Despite failing to fulfill their obligations, Defendants are currently unlawfully retaining and refusing to fully or partially refund Plaintiffs' Spring 2020 semester tuition, fees, and meal plans, despite the dramatically lower quality and less valuable education and services now being provided.

14. Essentially, students have paid Defendants for access to buildings they

---

[1] https://www.change.org/p/usc-president-carol-l-folt-partial-tuition-reimbursement-at-university-of-southern-california (last visited May 3, 2020).

can no longer enter, technology the University is not providing, activities that are not available, and meals that will never be served. USC is thus profiting from COVID-19 while further burdening students and their families, many of whom have borne the brunt of the pandemic, themselves been laid off, or who are ill or suffering from financial setbacks. The result is an enormous windfall to Defendants. Both contract and equity demand that Defendants disgorge their ill-gotten funds.

15. Plaintiff and similarly situated USC students are entitled to have Defendants disgorge in full the portions of their payments for unused services and to refund their tuition for substandard classes. Plaintiffs bring this class action for injunctive, declaratory, and equitable relief, and any other available remedies, resulting from Defendants' illegal, inequitable, and unfair retention of the funds paid by Plaintiff and the other students in the proposed Class.

16. Specifically, this lawsuit seeks disgorgement and monetary damages in the amount of prorated, unused amounts of tuition, fees and meal plan charges that Plaintiff and the other Class members paid, which benefits will not be provided by Defendants, including the difference in value between the live in-person classes for which Spring 2020 semester students enrolled and for which they paid at the start of the Spring 2020 semester, compared to the lesser online versions of classes USC has been providing to them since mid-March 2020.

## II. PARTIES

### A. Plaintiff

17. Plaintiff Latisha Watson is a resident of Los Angeles, California. Ms. Watson is a graduate student studying social work at USC. She is scheduled to receive her master's degree in Social Work ("MSW") in May 2021.

**B. Defendants**

18. USC is a private corporation with its principal place of business is in Los Angeles County, California.

19. USC is governed by the Board of Trustees of The University of Southern California ("USC Board of Trustees"), which has approximately 55 voting members. The USC Board of Trustees is a self-perpetuating body, electing one-fifth of its members each year for a five-year term of office.

## III. JURISDICTION AND VENUE

20. This Court has original jurisdiction under 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5,000,000, exclusive of interests and costs, and because at least one member of the Class defined below is a citizen of a state other than California.

21. This Court has personal jurisdiction over Defendants because Defendants maintain their principal place of business in this judicial District.

22. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), because Defendants reside in this District and are residents of the state in which the District is located.

## IV. FACTUAL ALLEGATIONS

23. USC is one of the nation's most prestigious universities and offers more than 400 graduate and professional programs through its liberal arts college and 20 professional schools.

24. In the 2020 edition of U.S. News & World Report's Best Colleges, USC was ranked twenty-second in the top tier for "Best National University." It tied for the fifty-sixth spot in the same rankings for best undergraduate teaching.

25. USC is also one of the nation's most expensive private secondary

educations. USC markets itself and justifies its higher cost by touting the vitality of its educational experience, which it describes as "more than just classes." In particular, the University touts its campus and the numerous varied extra-curricular activities and communities. For example, the University website proclaims: "Living on campus puts you close to your classes, USC libraries, and the student organizations and events that make campus life rewarding."[2]

26. USC boasts more than 1,000 student organizations. Over 560 results are returned when USC's directory of organizations is searched for the phrase "social work" and there are at least 10 separate student organizations that have the phrase "social work" in their name.

27. Plaintiff paid $21,886.38 in tuition and fees for the Spring 2020 semester.

28. Plaintiff took out loans to pay for her tuition and fees.

29. Plaintiff has not attended any in-person classes since March 13, 2020. Instead, all her classes have been moved online.

30. Plaintiff has neither received nor been offered any refund or reimbursement for the in-person tuition or fees that she paid for the Spring 2020 semester at USC.

31. As a result of the closure of USC, Defendants have not delivered the educational services, facilities, programs, meals, and opportunities for which Plaintiff and students in the proposed Class contracted and paid. Plaintiff and the proposed Class are therefore entitled to a full refund of that portion of the fees and tuition for the latter half of the Spring 2020 semester that Defendants did not provide, or which they provided in a severely diminished manner.

32. The remote, online learning "classes" offered to Spring 2020 students

[2] https://admission.usc.edu/live/residential-life/ (last visited May 3, 2020).

since March deprive students of in-person learning from their peers and school faculty. The move to these remote classes also deprives students of access to the facilities, materials, and opportunities only offered on USC's physical (as opposed to virtual) campus.

33. The online classes Plaintiff and her peers have been provided are not equivalent to the in-person, campus experience that Plaintiff and other USC students chose for their university education. The tuition and fees USC charged were predicated on access to and constant interaction with and feedback from peers, mentors, professors and guest lecturers; access to technology, libraries, and laboratories; spectator sports and athletic programs; student government and health services; and extracurricular groups and learning, among other things.

34. The online classes offered to Plaintiff and her peers are also of substantially lower quality and are objectively worth less than the courses USC offers which are intended to be online from inception.

35. USC offers an online Master's in Social Work program, for example. The program is referred to as the VAC Program or as MSW@USC. USC runs and manages its online MSW program in conjunction with a third-party provider of digital educational tools and interfaces called 2U.

36. USC charges the same amount of tuition for online courses offered through 2U as it does for in-person tuition on its campuses.

37. The educational tools and interfaces provided to USC by 2U are so valuable that USC has a long-term contractual agreement (extending to 2030) whereby it has agreed to pay to 2U ***sixty-percent (60%)*** of the tuition paid by online students.

38. However, when USC switched its in-person students, such as Plaintiff, to online courses, those students were not added to courses run by 2U.

39. Instead, Plaintiff and other in-person students were placed in haphazard courses run through the Zoom conferencing application. Those classes experienced numerous problems and deficiencies and were and are clearly less valuable than the online classes offered by USC through 2U.

40. For example, class sizes in online classes run through 2U are limited to twelve people to ensure that the educational experience is not hindered by large class sizes. Yet since her classes were moved online and run by USC directly, Plaintiff's class sizes have remained the same, consisting of 20-30 students per class.

41. In addition, due to predictable learning fatigue that ensues from trying to stay engaged in a remote environment, VAC online classes are scheduled to last for far shorter time periods online than in-person discussion-based classes. The online VAC classes also have an additional component that is asynchronous. The majority of a student's time in the online VAC MSW program is spent doing fieldwork. 2U is known for providing innovative and specially tailored educational placements in the field.

42. Unlike the VAC courses offered through 2U, USC's self-run post-COVID-19 online classes run for *three hours at a time*. USC's newly online classes lack numerous asynchronous components provided through the VAC program, including the extensive fieldwork opportunities.

43. Plaintiff and Class members' fieldwork time has not increased as a result of USC's transition to online coursework.

44. The VAC Program also carries numerous other benefits and professional opportunities which Plaintiff has not been provided, including a WeWork Global Access Membership, LinkedIn Premium Career Access, and access to numerous online community building tools provided by 2U.

45. In short, USC's same-price online program through 2U includes tools,

class size limits, community building, additional fieldwork, and a variety of additional qualitative and quantitative benefits provided to students who bargained to be online from the start.

46. Despite USC's transitioning of Plaintiff and other Class members to an online learning format, Plaintiff and Class members have not been offered the tools or benefits that 2U provides, presumably because USC would be required to pay for such services—in the amount of approximately 60% of the tuition paid by the students.

47. Instead, Plaintiff and Class members have been provided with a second-rate online substitute which is cheaper for USC to provide by simply putting existing professors and classes on Zoom. But USC's post-COVID-19 online student offerings do not even come close to comparing with either USC's in-person course experience or its online offerings with 2U. Instead, they are overpriced bubble-gum and duct-tape substitutes.

48. As part of the $21,866.38 she paid to USC, Plaintiff paid $675.00 for a meal plan for students who live off-campus, as Plaintiff does. The meal plan included 40 Meals in on-campus dining facilities, specifically, Café 84, Everybody's Kitchen & Parkside Residential Dining Venues. The plan also included $150 Dining Dollars which could be used in USC Hospitality Park Campus & Health Sciences Campus, and retail and residential dining venues, throughout the semester.

49. Plaintiff also paid a mandatory "student programming fee" of $43 per semester but has been unable to access meaningful student programming since the school shut down.

50. Plaintiff has neither received nor been offered any refund for the unused portion of her mandatory meal plan.

51. At the time USC closed, Plaintiff had only used approximately half the

meals and Dining Dollars that were part of the meal plan she purchased. Moreover, during the closure many of the dining locations that were part of Plaintiff's meal plan have been closed, and all dining options have been transformed to be take-out only. Plaintiff and members of the Class therefore receive significantly limited dining options and none of the social benefits of the meal plans and on-campus dining experiences for which they paid.

52. Plaintiff does not own a car and taking public transportation at this time poses risks of exposure to COVID-19. Traveling to the campus would take Plaintiff over an hour on the bus.

53. Traveling an hour to campus to pick up take-out food from the few remaining dining options on campus would violate the spirit, if not the letter of California Governor Gavin Newsom's stay-at-home order. Further, it is unreasonable to expect students to travel from off-campus housing to purchase take-out meals from campus when all other campus facilities and activities are closed.

54. Per USC policy, "[a]ll required meal plans reset at the end of each semester. Remaining funds cannot be refunded or transferred." Meal plan changes are not accepted after January for the Spring semester. Thus, USC's closure of campus will result in Plaintiff's and other Class members' unused meals and Dining Dollars being completely lost.

55. Through this lawsuit, Plaintiff seeks—for herself and the other Class members—Defendants' disgorgement and/or refund of the prorated, unused portion of meal fees, proportionate to the amount of time that remained in the Spring 2020 semester when the campus was shut down, when classes moved online and when campus dining services ceased being provided in full, as well as a refund of a percentage of tuition based on students no longer being able to attend classes in person and instead being offered a sub-par online learning experience.

## V. CLASS ACTION ALLEGATIONS

56. Pursuant to Fed. R. Civ. P. 23(a), (b)(2), (b)(3), and/or (c)(4), Plaintiff brings this action on behalf of herself and the following Class:

> All persons who paid the University of Southern California tuition and/or fees for in person education and/or who paid for unused and unrefunded meal plans to the University of Southern California for the Spring 2020 semester.

57. A class action is a superior means to ensure the fair and efficient adjudication of this case. The damages suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of the claims described herein against the Defendants. Moreover, individualized actions would run the risk of creating inconsistent or contradictory judgments arising from the same set of facts and would increase the likely delay and expense to all parties involved and the Court itself. By contrast, by proceeding as a class action, the claims at issue can be adjudicated efficiently through economies of scale.

58. **Numerosity.** In accordance with Fed. R. Civ. P. 23(a)(1), the members the proposed Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. Although the precise number of Class members is unknown presently to Plaintiff, the Class is presumed to number more than 40,000 people and is easily ascertainable through enrollment and financial records maintained by Defendants.

59. **Commonality and Predominance.** In accordance with Fed. R. Civ. P 23(a)(1) and (b)(3), this action involves questions of law and fact common to the Class that predominate over any individual questions specific to any Class member. These include:

a. whether Defendants accepted money from the Class;

b. whether Defendants retained money from the Class for services they did not render, or only partially rendered;

c. whether Defendants entered into a contract with the Class;

d. whether Defendants breached their contract with the Class;

e. whether Defendants' failure to refund unused meal plans was appropriate;

f. whether Defendants benefited from the money they accepted from the Class;

g. whether the educational and other services Defendants provided to the Class were commensurate with their value;

h. whether certification of the Class is appropriate under Fed. R. Civ. P. 23;

i. whether Class members are entitled to declaratory, equitable, or injunctive relief, and/or other relief; and

j. the amount and nature of relief to be awarded to Plaintiff and the other Class members.

60. **Typicality.** Pursuant to Fed. R. Civ. P. 23(a)(3), Plaintiff's claims are typical of the other Class members' claims because Plaintiff and the other Class members each paid for certain costs associated with the Spring 2020 semester but were not provided the services that those costs were meant to cover. Each suffered damages in the form of their lost tuition, fees, and other monies paid to Defendants, and the claims all arise from the same USC practices and course of conduct. There are no defenses available that are unique to the Plaintiff.

61. **Adequacy of Representation.** In accordance with Fed. R. Civ. P 23(a)(4), Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the other proposed Class members. Moreover, Plaintiff has retained counsel competent and experienced in complex class action litigation,

and she intends to prosecute this action vigorously on behalf of her fellow Class members. Plaintiff has no interests that are antagonistic to those of the Class and she will fairly and adequately protect the proposed Class' rights along with counsel.

**COUNT I**

**Breach of Contract**

62. Plaintiff repeats and alleges the allegations in Paragraphs 1-61, above, as if fully alleged herein.

63. Plaintiff brings this claim individually and on behalf of the other members of the Class.

64. Plaintiff and the other members of the Class entered into binding contracts with the University of Southern California through Defendant Board of Trustees, for which USC was the direct beneficiary, which provided that Plaintiff and the other members of the Class would pay tuition and fees, including fees for dining services, to USC, in exchange for on-campus educational, social, and dining facilities and experiences.

65. As part of their contracts with USC, and, in exchange for adequate consideration that Plaintiff and members of the proposed Class provided, Defendants promised to provide educational and campus services and a meal plan during the Spring 2020 semester.

66. Defendants failed to provide the services that they were obligated to perform under their contracts with Plaintiff and the proposed Class. Defendants have retained tuition, fee and meal plan payments paid by Plaintiff and the other members of the Class for the full 2020 Spring semester without providing them the promised benefits, instead providing those benefits for only a portion of the 2020 Spring semester.

67. By contrast, Plaintiff and the other members of the Class fulfilled their

end of the bargain when they paid the monies due and owing for their full tuition, fees, and meal plans for the semester.

68. The tuition, fees and meal plan payments that Plaintiff and the proposed Class paid were intended to cover in-person educational and extra-curricular services from January through May 2020. Defendants, however, failed to provide the services due under the contracts for that entire time period, yet have improperly retained the funds Plaintiff and the proposed Class paid for their Spring 2020 tuition and meal plans without providing them the services and other benefits due under the contracts.

69. Plaintiff and members of the Class have suffered damages as a direct and proximate result of Defendants' breach, including being deprived of the education, experience and services that they were promised and expected to obtain, and for which they have paid. They are entitled to damages including but not limited to prorated reimbursement of the tuition, fees and other expenses that were collected by Defendants for services that Defendants failed to deliver fully.

70. Defendants' performance under the contracts is not excused because of COVID-19. Even if performance was excused or impossible, USC would nevertheless be required to return the funds received for services and/or goods that it did not provide.

**COUNT II**

**Restitution Based On Quasi-Contract**

71. Plaintiff repeats and allege the allegations in Paragraphs 1-70, above, as if fully alleged herein.

72. Plaintiff brings this claim individually and on behalf of the other members of the Class in the alternative to the breach of contract claim brought in Count I.

73. Plaintiff and other members of the proposed Class conferred a benefit or enrichment on USC by paying tuition, required fees and meal plan fees to USC which were beneficial to USC, at the expense of Plaintiff and the other members of the Class.

74. Plaintiff and the other members of the Class paid tuition, required fees and meal plan fees and did not receive the full benefit of their bargain from USC, thus resulting in their impoverishment.

75. USC has retained the benefit paid by Plaintiff and the Class despite its failure to provide the services for which the benefit was paid.

76. There is no justification or cause for USC's failure to return the portion of the tuition, fees and meal plan fees that USC has unjustifiably kept for itself even though it failed to complete the services for which Plaintiff provided the funds to USC.

77. Accordingly, USC has been unjustly enriched and should pay as restitution a prorated portion of the funds for the Spring 2020 semester that Plaintiff and the proposed Class paid for tuition, required fees and meal plan fees.

## COUNT III

### Conversion

78. Plaintiff repeats and re-alleges the allegations in Paragraphs 1-77, above, as if fully alleged herein.

79. Plaintiff brings this claim individually and on behalf of the Class.

80. Plaintiff and the other members of the Class have a right to the in-person educational and extra-curricular services that they were supposed to be provided in exchange for their payments to USC.

81. Defendants intentionally interfered with the rights of Plaintiff and the other members of the proposed Class when they retained fees intended to pay for

on-campus classes, facilities, activities, and meal plans, while moving all classes to an online, remote learning format and discontinued services and access to facilities for which Plaintiff and the members of the proposed Class had paid.

82. Defendants deprived the Plaintiff and the other members of the Class of their fees or of the right to the services for which their fees were intended to be used.

83. Class members demanded the return of the prorated, unused fees for the remainder of the Spring 2020 semester.

84. Defendants' retention of the fees paid by Plaintiff and the other members of the Class without providing the services for which they paid deprived Plaintiff and the other members of the Class of the benefits for which the fees were paid. This interference with the services for which Plaintiff and the other members of the Class paid damaged Plaintiff and the other members of the Class in that they paid fees for services that were not and will not be provided.

85. Plaintiff and the other members of the Class are entitled to the return of prorated unused portion of the fees paid, through the end of the semester

**COUNT IV**

**Cal. Bus. & Prof. Code § 17200**

86. Plaintiff reiterates each of the allegations in the preceding paragraphs as if set forth at length herein.

87. By failing to refund Plaintiff's tuition, fees and meal plan charges, Defendant caused an injury to Plaintiff's property.

88. Defendants' practices constituted unlawful, unfair, and fraudulent business practices.

89. Defendants' practices were unlawful because they violated USC's contract with Plaintiff, unjustly enriched USC, and caused Plaintiff not to receive

goods and services for which she paid. The practices were unfair because it is unethical, immoral, unscrupulous, oppressive, and substantially injurious to consumers to deny students the value of the goods and services to which they were entitled and unfairly cause Plaintiff and members of the Class to shoulder the entire burden of USC's COVID-19 related shutdown. USC is far better situated to bear the costs of the shutdown than its students and, in any event, has failed to provide students with the goods and services for which they paid. This denial is due to no fault of Plaintiff or the Class.

90. Defendants' practices were fraudulent because students were charged and paid for goods and services that were promised to them but which they did not receive.

91. The harm caused by these business practices vastly outweighs any legitimate utility they possible could have.

92. Because USC has already announced that Summer classes will be online, there is a real and immediate threat that Plaintiffs will suffer the same ongoing injuries.

93. Plaintiff and the Class are entitled to injunctive relief, restitution, disgorgement, and to the recovery of attorneys' fees and costs.

## VI. PRAYER FOR RELIEF

94. Plaintiff, individually and on behalf of the members of the Class, respectfully requests that the Court enter judgment in their favor and against Defendants as follows:

a. Certifying the Class as requested herein, designating Plaintiff as Class representative, and appointing the undersigned counsel as Class Counsel;

b. Declaring that Defendants are financially responsible for notifying the Class members of the pendency of this suit;

c. Declaring that Defendants wrongfully kept the monies paid by the Class;

d. Awarding injunctive relief and restitution as permitted by law or equity;

e. Awarding Plaintiff's reasonable attorneys' fees, costs, and expenses;

f. Awarding pre- and post-judgment interest on any amounts awarded; and

g. Awarding such other and further relief as the Court deems just and proper.

## VII. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure on all causes of action so triable.

Dated: May 5, 2020

Respectfully submitted,

BERGER MONTAGUE PC

*/s/ Benjamin Galdston*

Benjamin Galdston (SBN 211114)
12544 High Bluff Drive, Suite 340
San Diego, CA 92130
Tel: (619) 489-0300
Email: bgaldston@bm.net